Charles P. Maher, State Bar No. 124748
RINCON LAW LLP
268 Bush Street, Suite 3335
San Francisco, California 94104
Telephone No.: 415-996-8280
Facsimile No.: 415-680-1712
Email: cmaher@rinconlawllp.com

Counsel for KARI BOWYER,
Trustee in Bankruptcy

UNITED STATES BANKRUPTCY COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

In re

    ARLENE J. NOODLEMAN
    and
    F. RICHARD NOODLEMAN,

    Debtors.

Case No. 16-53410 SLJ
Chapter 7
Hon. Stephen L. Johnson

[No Hearing Requested]

**STIPULATION TO ENTRY OF ORDER REGARDING
DISPOSITION OF LIMITED ASSETS**

    Kari Bowyer, Chapter 7 Trustee of the estate of the above Debtors, and Live Oak Bank stipulate as follows:

    1.    The Debtors filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code on December 2, 2016. Kari Bowyer was appointed Chapter 7 Trustee and continues to serve in that capacity.

    2.    In 2015, the Debtors entered into a transaction for the purchase of shares of a professional corporation organized under the laws of Oregon. In connection with that acquisition, the Debtors directly or indirectly borrowed almost $4 million from Live Oak Bank. To the extent the Debtors were not the direct borrowers, they executed guaranties.

    3.    To secure the loans and guaranties, the Debtors executed security agreements with Live Oak Bank that, in effect, gave Live Oak Bank a lien on virtually all of the Debtors' assets. It

appears to the Trustee that Live Oak Bank has properly perfected its security interest in the Debtors' residence and in personal property assets.

4. Previously, the Trustee and Live Oak Bank have stipulated to entry of an order granting Live Oak Bank relief from the automatic stay to foreclose on its security interest in the Debtors' residence. The Trustee and Live Oak Bank anticipate that they will stipulate later to relief from the automatic stay for Live Oak Bank to foreclose on other assets that are subject to its security interest.

5. The Trustee and Live Oak Bank have identified certain assets that either are not subject to Live Oak's lien or would be more successfully liquidated by the Trustee, either for the estate's benefit or for the mutual benefit of the estate and Live Oak Bank.

6. Among the Debtors' intangible assets are claims for professional negligence against a law firm and an accounting firm. California public policy prohibits assignment of claims for legal malpractice which, in legal effect, defeats any security interest in legal malpractice claims. California law similarly may prohibit assignment of claims for accountant malpractice. To the extent that Live Oak Bank has a perfected security interest in claims for professional negligence, Live Oak Bank hereby waives that interest, and agrees that the Trustee may pursue these claims for the benefit of the bankruptcy estate.

7. Another asset is the membership of the Debtors in a limited liability company called Los Gatos Professional Building, LLC, which owns real property in Campbell, California. The Debtors maintained an 11 percent interest in that limited liability company. The real property has significant value over and above debt secured by the property. The value of the 11 percent membership interest has not been determined.

8. There is some doubt whether Live Oak Bank has a security interest in the membership interest. Live Oak Bank and the Trustee agree that the Trustee is more likely to maximize the value of the limited liability company membership than Live Oak Bank would be if it successfully foreclosed on that interest. To avoid any dispute over the security interest and to provide a benefit to both the bankruptcy estate and Live Oak Bank, the Trustee and Live Oak Bank have agreed that the Trustee will pursue efforts to liquidate the limited liability company

membership interest, either through a sale to a third party consistent with the limited liability company operating agreement, or in a transaction with the members of the limited liability company, or the limited liability company itself. Any sale is subject to Court approval and Live Oak Bank will retain its rights as a general creditor to object to any transaction proposed by the Trustee for Court approval.

9. Upon completion of a Court-approved sale of the interest, the gross proceeds of sale will be divided on a 50/50 basis between Live Oak Bank, in its capacity as secured creditor, and the bankruptcy estate. If, at the end of the bankruptcy case, Live Oak Bank has exhausted its collateral and is still owed a balance as an unsecured claim, it will be entitled to participate as a general unsecured creditor in distributions from the bankruptcy estate.

10. Subject to notice to general creditors and other parties in interest, Live Oak Bank and the Trustee stipulate to entry of an order approving this stipulation.

DATED: 4/6, 2017    McCARTHY & HOLTHUS, LLP

By: _____
Kristin Zilberstein,
Counsel for Live Oak Bank

DATED: April 6, 2017    RINCON LAW LLP

By: _____
Charles P. Maher,
Counsel for Kari Bowyer, Chapter 7 Trustee

3