Charles P. Maher, State Bar No. 124748
RINCON LAW LLP
268 Bush Street, Suite 3335
San Francisco, California 94104
Telephone No.: 415-996-8280
Facsimile No.: 415-680-1712
Email: cmaher@rinconlawllp.com

Counsel for KARI BOWYER,
Chapter 7 Trustee

UNITED STATES BANKRUPTCY COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| In re | Case No. 16-53410 SLJ |
|---|---|
| ARLENE J. NOODLEMAN and F. RICHARD NOODLEMAN, | Chapter 7 Hon. Stephen L. Johnson |
| Debtors. | [No Hearing Requested] |

**MOTION TO COMPROMISE**

Kari Bowyer, Chapter 7 Trustee of the estate of the above Debtors, moves the Court for an order authorizing her to enter into a compromise with a law firm and attorneys at the law firm (the "Law Firm") the Debtors had engaged to assist them in the acquisition of shares in a medical corporation in Medford, Oregon. The Debtors claimed that the Law Firm rendered services below the standard of care and that, as a result, they suffered damages in excess of $1.2 million.

In mid-2016, the Debtors commenced an arbitration against the Law Firm. By the date on which the Debtors filed their voluntary Chapter 7 petition, a 5-day arbitration had been scheduled for July 2017. The filing of the Chapter 7 petition upset the arbitration schedule. The Debtors were displaced by the Trustee as real party in interest. The attorney wanted to continue the representation, and the Trustee was prepared to engage him to represent the estate, however, the attorney informed the Trustee that he no longer wanted to continue the representation and the Trustee would have to

find new counsel. A few weeks after the petition date, he also acknowledged that there was a significant possibility he would be called as a percipient witness at the arbitration. The withdrawing attorney appeared at a status conference in mid-January 2017; the status conference was continued to late January 2017 to permit the Trustee to engage new counsel. Engagement of new counsel was not easy. The Trustee's general bankruptcy counsel appeared at the continued status conference and at a second status conference in late February 2017. By that date, the Trustee had identified a law firm to represent her in the arbitration, Carlson, Calladine & Peterson, LLP ("Special Counsel"). Special Counsel has been retained on an hourly rate basis, not a contingency fee basis.

Special Counsel made a thorough review of the available records and provided the Trustee with an analysis of the merits. Special Counsel also warned the Trustee that the out-of-pocket expenses that would be necessary to properly conduct the arbitration would be very significant. Special Counsel reached a conclusion about the merits that differed from the conclusion reached by the Debtors' attorney and recommended that a concerted effort be made to settle the dispute. After a series of discussions between counsel for the Trustee and counsel for the Law Firm, a settlement has been negotiated by which the Law Firm will pay the estate $165,000 in full and complete satisfaction of the estate's claims against the Law Firm and will dismiss any claims with prejudice. For the reasons stated below, the Trustee believes the settlement is in the best interest of the estate and should be approved by the Bankruptcy Court.

The claims against the Law Firm are exclusively property of the bankruptcy estate under Section 541(a) of the Bankruptcy Code. The Law Firm has requested that the Trustee include in the form of order submitted to the Court a provision that all claims against the Law Firm are exclusively property of the estate, under the exclusive control of the Trustee, and have been fully and finally adjudicated and disposed of by the Trustee through the compromise described in this motion. The Trustee has agreed to include such a provision in the form of order submitted to the Bankruptcy Court, and is notifying parties-in-interest, including the Debtors, that she will be doing so.

In the Ninth Circuit, a compromise with a defendant of claims against it must be analyzed as both a compromise and as a sale. The agreement described in this motion is being presented as a compromise only because the claims against the Law Firm differ from claims in an ordinary

lawsuit and public policy prevents them from being sold. The assignment of legal malpractice claims in California is prohibited.

**Background**

The Debtors operated a dermatology practice in Campbell, California. The Debtors were looking for opportunities in other geographical areas. In early 2015, they found an entity in Medford, Oregon called Ventana Wellness, Inc., which provided a variety of health-related services to persons in the Medford area. The Debtors undertook negotiations with Ventana's shareholders to purchase 100 percent of the stock in Ventana Wellness. The Debtors engaged the Law Firm and an accounting firm to assist them in negotiating the transaction and in preparing the documents related to it. The Debtors had engaged the Law Firm in other matters previously.

The Debtors or entities they owned borrowed almost $4 million for the acquisition of the shares and executed a note in favor of the sellers for another $1 million. They arranged for a $609,000 operating loan to Ventana Wellness. Although the Debtors were not the direct borrowers on all of the loans, they executed guaranties which made them liable for all of the debt. The Debtors pledged virtually all of their assets as collateral for the loans and guaranties.

The transaction contemplated that the existing employees of Ventana Wellness, including one of the owners, Nisha Jackson, would continue to work at Ventana Wellness. Included in the transaction documents was a new employment agreement between Nisha Jackson and Ventana Wellness under its new ownership. The employment agreement included a covenant not to compete with Ventana Wellness if Ms. Jackson left its employ. Disputes arose and Ms. Jackson left Ventana Wellness approximately three months after the sale of stock closed. Litigation ensued in Oregon. The Trustee is informed and believes that, at the same time, relations between the Debtors and other employees of Ventana Wellness did not go well and a number of important health professionals left. The corporation began to fail.

The Debtors attributed the failure of the enterprise to misconduct on the part of the sellers and poor documentation that did not restrict the sellers sufficiently or prevent the other departures. They asserted that the transaction documents were inconsistent with one another and left the Debtors without adequate protection or recourse against the sellers. The Debtors place primary blame on

the Law Firm for flaws in the documentation.

On its part, the Law Firm has contended that the Debtors did not want to run up huge legal expense and discouraged the Law Firm from undertaking certain tasks that it otherwise might have undertaken while the transaction was being negotiated. The Law Firm contends that the Debtors insisted on negotiating agreements on their own. The Law Firm further contended that, putting the dispute with Ms. Jackson aside, the Debtors mismanaged Ventana Wellness and themselves drove employees away, leading to inevitable failure.

The Debtors contended that, had the legal service rendered by the Law Firm been up to the standard of care, the difficulties the Debtors encountered with Ms. Jackson would either not have occurred or would have been less significant and the business would have continued and succeeded, and they would have avoided the enormous losses that drove them into Chapter 7.

Approval or rejection of a compromise is within the Court's discretion. In considering the approval of a proposed compromise, the Court must take into account the following factors:
1. The probability of success in the litigation;
2. The difficulty, if any, to be encountered in collection;
3. The complexity of the litigation involved and the expense, inconvenience, and delay necessarily attending it;
4. The paramount interest of creditors and proper deference to their reasonable views.

*In re A&C Properties*, 784 F. 2d 1377, 1381 (9th Cir. 1986).

Probability of Success

The Trustee estimates that the probability of success on the merits is between 30 and 60 percent.

Difficulty in Collection

If the Trustee were to obtain a judgment, she believes she would be able to enforce it without a great deal of difficulty.

Complexity, Expense, and Delay

The facts are complicated and a great deal of discovery would be necessary. The Trustee would be required to employ accounting and legal malpractice experts to testify at the arbitration. She anticipates a great deal of expense. With an arbitration now scheduled for December 2017, she does not believe the arbitration would delay administration of the estate considerably.

<u>Paramount Interest of Creditors</u>

The settlement brings into the estate certain money with minimal legal expense.

WHEREFORE the Trustee requests entry of an order authorizing the relief sought above.

DATED: April 20, 2017    RINCON LAW LLP


By: */s/Charles P. Maher*
    Charles P. Maher
    Counsel for Kari Bowyer, Chapter 7 Trustee